## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH A. THOMAS MD, LLC, a Connecticut limited liability company, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>MEDGYN PRODUCTS, INC., an Illinois corporation,<br><br>*Defendant.* | Case no. |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kenneth A. Thomas MD, LLC ("Thomas" or "Plaintiff") brings this Class Action Complaint against MedGyn Products, Inc. ("MedGyn Products" or "Defendant"), to stop its practice of sending unauthorized and unwanted fax advertisements, and to obtain redress for all persons and entities similarly injured by its conduct. Plaintiff alleges as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by its attorneys.

### PARTIES

1.      Plaintiff Kenneth A. Thomas MD, LLC is a Connecticut limited liability company with its principal place of business in Stratford, Connecticut.

2.      Defendant MedGyn Products is an Illinois corporation with its principal place of business in Addison, Illinois.

### JURISDICTION & VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227

("TCPA"), a federal statute for which there is federal question jurisdiction.

4.      The Court has personal jurisdiction over Defendant and venue is proper in this

District because Defendant has its head office in this District and because Defendant's wrongful

conduct was directed from this District.

### INTRODUCTION TO MEDGYN PRODUCTS

5.      MedGyn Products manufactures and distributes medical decides for the women's

healthcare industry.[1]

6.      As part of an overall marketing plan to advertise its programs, services, and goods,

MedGyn Products sends unsolicited faxes to doctors and their organizations.

7.      The unsolicited faxes advertise the different products that MedGyn Products sell,

including pricing for various items.

8.      Defendant MedGyn Products sends these fax advertisements to individuals and

business with which it has no existing business relationship, and without express invitation or

permission, in violation of the TCPA.

9.      MedGyn Products used an email to fax delivery system to send the fax

advertisements at issue, as seen in the faxes Plaintiff received:

## Email to Fax Delivery

```
To:     12033776497
From:   t2@medgyn.com
Date:   February 24, 11:14:07 AM EST
Subj:   ATTN: Office Manager
Pages:  1
```

10.     The fax advertisements at issue failed to provide recipients with proper opt-out

---

[1] https://www.linkedin.com/company/medgyn-products-inc./about/

notice information required by the TCPA and implementing regulations. Specifically, the faxes failed to provide notice identifying a facsimile number and domestic contact telephone number for fax recipients to transmit their opt-out requests.

### FACTS SPECIFIC TO PLAINTIFF KENNETH A. THOMAS MD, LLC

11. On March 21, 2019 at 2:19, MedGyn Products sent 8 unsolicited faxed pages to Plaintiff Thomas that advertising medical products and including pricing. (True and accurate copies of the fax advertisements are attached hereto as Exhibit A).

12. The fax advertisements promoted the commercial availability and quality of MedGyn Products and directed the recipient to visit MedGyn.com to view a full catalog:

Hello Doctors, Nurses and Office Managers,
We have a New Wireless Ultra Sound. The cost is $10,000.
If you need any samples of a product let me know.
Web Site MEDGYN.com to see Catalog.
Curettes Sizes 6mm - 12mm (50/Pack) Each $0.85
Curettes Sizes 13mm - 16mm (25/Pack) Each $3.85          [2]

13. On February 24, 2020 at 11:14 AM, Plaintiff received a one-page unsolicited fax from Defendant. This fax serves as an introduction to a new MedGyn Products territory manager and also includes the advertisement of Defendant's products including pricing:

**WE CARRY A WIDE ARRAY OF EQUIPMENT, INSTRUMENTS, & DISPOSABLES.**

**We have Disposable products like: Aspiration Kit, Collection Set, Curettes, HSG Catheters, Laminaria, Pap Smear Devices, Pregnancy Test.**

**We also have instruments like Biopsy Punches, Speculums with or without a light, Cervical Dilators, long reach instruments and Pessaries. All Pessaries are $30 each.**

**Our product line includes sterile disposable medical devices, stainless steel instruments, equipment for procedures as well as diagnostic kits. We have been a leader in the OB/Gyn space for 40 years and pride ourselves on the service we provide to our clients.**

14. The fax advertisements failed to contain the required opt-out notice mandated by 47 U.S.C. § 227(b)(2)(D) and 47 C.F.R. § 54.1200(a)(4)(iii)-(iv). Specifically, the faxes failed to

---

[2] Page 1 of the 8-page faxes Plaintiff received on March 21, 2019

contain any language that identified a facsimile number and telephone number for fax recipients to transmit their opt-out requests.

15.     Plaintiff never consented to receiving solicitation faxes from Defendant and does not have an existing relationship with Defendant MedGyn Products.

## CLASS ACTION ALLEGATIONS

16.     **Class Definition:** Plaintiff Thomas brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) individually and on behalf of the following Class:

> All persons and entities in the United States who from four years prior to the filing of the initial complaint in this action through class certification, (1) received a facsimile advertisement, (2) on their fax machine, (3) sent from or on behalf of MedGyn Products, and (4) for whom MedGyn Products claims to have obtained consent in the same manner MedGyn Products claims to have obtained consent from Plaintiff, or MedGyn Products does not claim to have obtained consent.

The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definitions following appropriate discovery.

17.     **Numerosity**: The exact size of the Class is unknown and unavailable to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant faxed unsolicited advertisements to thousands of individuals and entities who fall into the definition of the Class. Class membership can be easily determined from Defendant's

records.

18. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff is a member of the Class, and if Defendant violated the TCPA with respect to Plaintiff, then it violated the TCPA with respect to the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct.

19. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a) How Defendant gathered, compiled, or obtained fax numbers of Plaintiff and the Class;

    b) Whether Defendant's faxes advertised the commercial availability or quality of property, goods, or services;

    c) Whether Defendant sent the fax advertisements without first obtaining Plaintiff and the Class's prior express permission or invitation to do so; and

    d) Whether Defendant's conduct was willful such that Plaintiff and the Class are entitled to treble damages.

20. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

21. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief

appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

22.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**<u>(On Behalf of Plaintiff and the Class)</u>**

23.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

24.     The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement. . . ." 47 U.S.C. § 227(b)(1)(C).

25.     The TCPA defines "unsolicited advertisement" as "any material advertising the

6

commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

26. The faxes sent by Defendant advertised the commercial availability and quality of its goods and services and were commercial in nature. Therefore, Defendant's faxes are advertisements under the TCPA.

27. Defendant sent the facsimile advertisements at issue to Plaintiff and members of the Class without their prior express invitation or consent, and despite the lack of an existing business relationship between it and members of the Class.

28. By sending the unsolicited advertisement faxes at issue to Plaintiff and members of the Class without their prior express invitation or permission, Defendant violated 47 U.S.C. § 227(b)(1)(C).

29. As a result of Defendant's conduct, Plaintiff and the members of the Class suffered actual damages, including the conversion or loss of paper and toner consumed in the printing of the faxes, the loss of use of the recipients' fax machines during the time required to receive, review and route the unauthorized faxes, as well as increased labor expenses.

30. Plaintiff and the Class are therefore entitled to a minimum of $500 in damages for each violation under 47 U.S.C. § 227(b)(3)(B). To the extent Defendant's misconduct is determined to be willful, the Court should treble the amount of statutory damages under 47 U.S.C. § 227(b)(3).

31. Additionally, as a result of Defendant's unlawful conduct, Plaintiff and the other members of the Class are entitled to an injunction under 47 U.S.C. § 227(b)(3)(A), to ensure that Defendant's violations of the TCPA do not continue into the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kenneth A. Thomas MD, LLC, on behalf of itself and the Class, prays for the following relief:

A.      An order certifying the Class as defined above, appointing Kenneth A. Thomas MD, LLC as the representative of the Class, and appointing its counsel as Class Counsel;

B.      An order declaring that Defendant's actions, as set out above, violate the TCPA;

C.      An order enjoining Defendant from further TCPA violations, and otherwise protecting the interests of the Class;

D.      An award of statutory damages;

E.      An award of pre-judgement interest and costs; and

F.      Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**KENNETH A. THOMAS MD, LLC**, individually and on behalf of all others similarly situated,

Dated: May 4, 2020

/s/ *Juneitha Shambee*
Juneitha Shambee, Esq.
Shambee Law Office, Ltd.
701 Main St., Ste. 201A
Evanston, IL 60202
(773) 741-3602
juneitha@shambeelaw.com
ARDC: 6308145

Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.

201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*